IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRISTOL-MYERS SQUIBB COMPANY, et al.<br><br>                Plaintiffs,<br><br>    vs.<br><br>CLARE E. CONNORS, in her official capacity as the ATTORNEY GENERAL OF THE STATE OF HAWAIʻI,<br><br>                Defendant. | CIVIL NO. 20-00010 JAO-RT<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Plaintiffs Bristol-Myers Squibb Company, Sanofi-Aventis U.S. LLC, Sanofi US Services, Inc., and Sanofi-Synthelabo LLC ("Plaintiffs") filed a Complaint against Clare E. Connors in her official capacity as the Attorney General of the State of Hawaiʻi (the "State"). The State moved to dismiss the Complaint, arguing the Court must abstain under *Younger v. Harris*, 401 U.S. 37 (1971). For the reasons stated below, the motion [ECF No. 33] is GRANTED.

## I. BACKGROUND

This is the second time Plaintiffs have asked a federal court to intervene in their dispute with the State of Hawaiʻi playing out in state court. The first time—

back in early 2014—Plaintiffs removed the State's[1] lawsuit against them regarding their marketing of Plavix, an anti-platelet prescription drug approved by the Food and Drug Administration ("FDA") to reduce heart attacks, strokes, and vascular death. *See Hawaii, ex rel. Louie v. Bristol-Myers Squibb Co.*, Civ. No. 14-00180 HG-RLP, 2014 WL 3427387, at *2 (D. Haw. July 15, 2014) ("*Bristol-Myers I*").[2]

In *Bristol-Myers I*, the State alleged Plaintiffs engaged in false and deceptive acts in violation of Hawaiʻi law, for example: (a) misleadingly marketing Plavix as more effective and safer than competitor drugs; (b) marketing Plavix for uses that had not been shown to be safe or effective; (c) failing to disclose that Plavix had a diminished or no effect on 30% of the patient population while marketing higher doses of Plavix to these patients despite considerable health risks; and (d) marketing it as a replacement for aspirin, but ignoring or concealing data finding Plavix only as effective or less effective than aspirin, despite costing one hundred times more. *See id.* The State sought civil penalties, disgorgement of Plaintiffs' profits, punitive damages, and declaratory and injunctive relief. *See id.* at *2–3. The district court remanded *Bristol-Meyers I* to state court for lack of federal

---

[1] The state action was filed by and through the State's then-Attorney General, David Louie.

[2] *See Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 999 (9th Cir. 2018) (stating court may take judicial notice of matters of public record on motion to dismiss).

2

jurisdiction.  *See id.* at *3–16.

Now, over five years later, *Bristol-Myers I* is set for trial in May 2020,[3] which prompted Plaintiffs to file this federal action.  *See* ECF No. 1 ("Compl.") ¶ 17.  Plaintiffs bring a single count against the State's current Attorney General under 42 U.S.C. § 1983 for violating their First Amendment rights.  *See id.* ¶¶ 126–38.  Plaintiffs' lengthy Complaint details why the state action is meritless, contends that the State's position in that suit is unsupported by the facts or medical evidence and conflicts with the FDA's position on Plavix, and characterizes the state action as a ploy for private attorneys to profit rather than a suit motivated by any legitimate concern for the health and safety of the State's residents.  *See generally* Compl.

In the state action, the State claims that any Plavix label that does not have a warning about the ineffectiveness of the drug among certain populations and the need for genetic testing to identify patients in that population is false or misleading.  *See id.* ¶ 3.  In this action, Plaintiffs claim that those warnings are unsupported by the evidence, controversial, and amount to improperly compelled speech.  *See id.* ¶¶ 88–89, 126–38.  Plaintiffs also claim that the prospect of a verdict against them in the state action—incurring large penalties for engaging in

---

[3] Plaintiffs' Complaint indicates trial is scheduled for April 2020, *see* Compl. ¶ 17, but the State's Reply reports the trial date is now May 2020, *see* ECF No. 38 at 6.

their own, truthful speech about Plavix without any proof of harm or malice—impermissibly chills their ability to engage in scientific debates about Plavix and other products, all in violation of their First Amendment rights. *See id.* Plaintiffs therefore ask this Court to declare that the state action violates their First Amendment rights and enjoin the State from proceeding with the state action or proceeding with the action using private counsel. *See id.* at 52–53. The State, in turn, asks the Court to abstain from exercising jurisdiction over this federal action under *Younger*, arguing that because Plaintiffs only seek declaratory and injunctive relief, the appropriate remedy is to dismiss the Complaint rather than stay the case. *See* ECF Nos. 33, 33-1. Plaintiffs oppose the State's motion to dismiss. *See* ECF No. 36.

## II. DISCUSSION

"The doctrine of abstention involves a decision by a federal court to decline to exercise jurisdiction over the underlying claims for reasons of comity." *Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048, 1058 (9th Cir. 2016) (citations omitted). In civil cases, *Younger* abstention is appropriate where a state court proceeding (1) is ongoing; (2) is a quasi-criminal enforcement action or involves a state's interest in enforcing the orders and judgments of its courts; (3) implicates important state interests; (4) provides an adequate opportunity to raise federal challenges; and (5) would be enjoined by the federal court action or where

4

the federal proceeding would have the practical effect of doing so, and no exception to *Younger* applies. *See Rynearson v. Ferguson*, 903 F.3d 920, 924 (9th Cir. 2018). The parties dispute whether the State has met the second and third prongs, and whether an exception to *Younger* applies.

### A. Quasi-Criminal Enforcement Action

The State contends the state action against Plaintiffs is a quasi-criminal enforcement proceeding. In *Sprint Communications, Inc. v. Jacobs*, the Supreme Court summarized its precedent regarding the nature of quasi-criminal civil enforcement actions:

> Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act. In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. Investigations are commonly involved, often culminating in the filing of a formal complaint or charges.

571 U.S. 69, 79–80 (2013) (citations omitted). The state action here—a civil enforcement action brought by the Attorney General seeking civil penalties, injunctive relief, and damages for unfair and deceptive acts in violation of Hawaiʻi consumer protection law—thus falls within this category of cases. *See, e.g.*, *Monster Beverage Corp. v. Herrera*, Case No. EDCV 13-00786-VAP (OPx), 2013 WL 12131740, at *4 (C.D. Cal. Dec. 16, 2013), *aff'd*, 650 F. App'x 344 (9th Cir. 2016) (holding *Younger* applied when City Attorney filed complaint in state court challenging company's unfair, deceptive, and unlawful business practices and

5

seeking an injunction, money damages, and civil penalties because the state suit was fundamentally a law enforcement action designed to protect the public rather than to benefit private parties); *TVI Inc. v. Ferguson*, CASE NO. C17-1845 RSM, 2018 WL 1610220, at *4 (W.D. Wash. Apr. 3, 2018) (concluding Attorney General's state action under Washington consumer protection statute for false and deceptive practices fell "squarely . . . under the category of 'state civil proceedings that are akin to criminal prosecutions,' . . . where *Younger* applie[s]" (citation omitted)); *State Farm Mut. Auto. Ins. Co. v. Metcalf*, 902 F. Supp. 1216, 1218 (D. Haw. 1995) ("Here, the State brought a civil action in order to enforce a state statute prohibiting unfair and deceptive advertising by insurance carriers. Such an action, allowing for fines and penalties for violations of the statute, is akin to a criminal prosecution."); *Backpage.com, LLC v. Hawley*, Case No. 4:17-CV-1951 PLC, 2017 WL 5726868, at *5–7 (E.D. Mo. Nov. 28, 2017) (holding *Younger* applied where Attorney General brought state action to enforce civil investigative demands issued to investigate violations of state consumer protection laws); *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 880–83 (8th Cir. 2002) (affirming *Younger* applied when Attorney General brought state action to enforce consumer protection statutes against corporation and entities related to that corporation filed suit in federal court arguing statutes could not apply to their business).

Plaintiffs nonetheless argue the state action is not a quasi-criminal enforcement action because it seeks to extract revenue rather than sanction them for wrongdoing. *See* ECF No. 36 at 22 (citing *Philip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 106 (2d Cir. 1997)). Aside from *Philip Morris* being non-binding, Plaintiffs' reliance on it is misplaced. In that case, the state brought a subrogation claim in state court against tobacco companies primarily to recover money it spent treating smoking-related illnesses that was monetary relief that would have been equally recoverable by private parties and had "little to do with eradicating unfair trade practices or anticompetitive business practices." 123 F.3d at 106–07 (citation omitted). Here, the State seeks to recover civil penalties that may *only* be collected in an action brought by the Attorney General or other state official on behalf of the State, *see, e.g.*, HRS § 480-3.1,[4] and there can be no dispute that the state action, including these penalties, seeks to eradicate what the State perceives to be the Plaintiffs' unfair and deceptive practices, *see, e.g.*, Compl. ¶ 17 (alleging state court action constitutes impermissible chilling because it seeks to eradicate certain

---

[4] "Any person, firm, company, association, or corporation violating any of the provisions of section 480-2 shall be fined a sum of not less than $500 nor more than $10,000 for each violation, which sum shall be collected in a civil action *brought by the attorney general or the director of the office of consumer protection on behalf of the State*." HRS § 480-3.1 (emphasis added); *see also* HRS § 480-15.1 (same regarding penalties for violating an injunction).

7

types of conduct).[5]  Indeed, Plaintiffs' Complaint repeatedly concedes the State is "seeking to punish them with massive civil penalties for failing to make [certain statements]."  Compl. ¶ 1; *see also id.* ¶ 78.

Despite these and similar allegations, Plaintiffs also argue the state action is not a quasi-criminal enforcement proceeding because the State is merely a nominal plaintiff in a suit litigated by private counsel.  Plaintiffs cite no authority to support their argument that this impacts the *Younger* analysis where, as here, it is undisputed the state action is brought by the Attorney General on behalf of the State in its sovereign capacity, and suing under certain Hawai'i statutes that authorize the Attorney General to bring such actions.  *See, e.g.*, HRS §§ 480-3.1, 480-15, 661-22; *see also Bristol-Myers I*, 2014 WL 3427387, at *6, *9–10 (noting state court action was filed as a *parens patriae* action, which allows the State to bring an action to protect its quasi-sovereign interest in the health and well-being of its residents and concluding State was the "real party in interest" for jurisdictional purposes, based in part on the fact that the Attorney General or other state official were the only parties legally able to recover the relief sought).  That the State is acting through private counsel in the state action thus does not alter the

---

[5]  As the State notes, the legislative history of these statutory penalties supports that they were intended to punish wrongdoers in order to deter and aid in more effective enforcement of the consumer protection law than mere injunctive relief could alone.  *See* ECF No. 38 at 8–9; ECF Nos. 38-2, 38-3, 38-4.

analysis under *Younger*. *See* HRS § 28-8(b) (authorizing Attorney General to appoint and retain private counsel to perform her duties and exercise her powers).

Nor is the Court persuaded by Plaintiffs' argument that *Younger* is inapplicable because there is insufficient evidence of an investigation preceding the filing of a formal complaint. Plaintiffs cite no authority that *Sprint* or Ninth Circuit cases interpreting it set a certain standard of pre-filing investigation as the litmus test for abstention under *Younger*. *See, e.g.*, *Sprint*, 571 U.S. at 79–80 (noting *Younger* did not apply, not only because no state authority conducted an investigation into the federal plaintiff's activities, but also because no state actor lodged a formal complaint and because the state action was initiated by a private company rather than the state in its sovereign capacity); *cf. Cook v. Harding*, 879 F.3d 1035, 1040 (9th Cir. 2018) (summarizing *Moore v. Sims*, 442 U.S. 415 (1979), which *Sprint* cited to as an example of a quasi-criminal enforcement action, wherein "[p]rior to the parents' [federal] action, the state had initiated proceedings alleging child abuse, *leading to* an investigation and subsequent custody hearings" (emphasis added) (citation omitted)). Regardless, as the State notes, an investigation by private counsel preceded the filing of a formal complaint, which has also been supplemented by six years of civil discovery. *See* ECF No. 38 at 11; *see also* ECF No. 6-11 (operative pleading in state court containing allegations that reflect investigation or inquiry into their factual bases);

9

*cf.* Haw. R. Civ. P. 11(b) (filing a pleading constitutes certification that, to the best of the attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, it is not presented for an improper purpose and all allegations and factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery). And in their Complaint, Plaintiffs allege the state action was the result of an investigation or inquiry by the Attorney General. *See* Compl. ¶ 66; *see also id.* ¶ 135 (alleging State did not conduct a "*serious* investigation" into Plavix (emphasis added)). Plaintiffs' argument that abstaining here would make a "mockery" of *Younger* is therefore unconvincing. *See* ECF No. 36 at 25.[6]

---

[6] Plaintiffs take this "mockery" language from *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*"), which noted that extending *Younger* to *any* state judicial proceeding *solely* because it is reviewing legislative or executive action would make a "mockery" of the rule that abstention applies in narrow circumstances. *See also Gilbertson v. Albright*, 381 F.3d 965, 974, 977 (9th Cir. 2004) (en banc) (describing *NOPSI* as "[m]aking clear that the mere existence of parallel proceedings is not sufficient but that the class of case matters" and noting that "a state proceeding which is nonjudicial or involves *the interpretation of completed legislative or executive action*" would not fit into that class of cases (emphasis added)). Plaintiffs have not characterized the state action here as judicial review or interpretation of a completed legislative or executive action. *See, e.g.*, *Nader v. Cronin*, Civil No. 04-00611 JMS/LEK, 2008 WL 336746, at *9 (D. Haw. Feb. 7, 2008), *aff'd*, 620 F.3d 1214 (9th Cir. 2010) (holding *Younger* inapplicable, noting there was *no* civil enforcement action brought by the state, and characterizing the state court action as judicial review of completed executive action when plaintiffs brought parallel proceedings in state and federal court challenging the State's refusal to put them on an election ballot based on a determination they failed to obtain the requisite number of signatures).

The other cases Plaintiffs cite that concluded an action was not a quasi-criminal enforcement proceeding are similarly inapplicable here. *See Cook*, 879 F.3d at 1040 (holding *Younger* did not apply when state action involved contractual dispute between private parties); *Rynearson*, 903 F.3d at 925–26 (holding *Younger* did not apply to protection order proceeding under Washington law that was initiated by a private party, required no involvement from any state actor, and when the purpose was to protect the petitioner rather than punish the respondent); *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 760 (9th Cir. 2014) (holding *Younger* did not apply when state action involved insurance dispute between private parties where one requested agency review and then judicial review). Plainly, the state action here is the type of proceeding to which *Younger* applies.

B.   **Implicates Important State Interests**

Plaintiffs also contend *Younger* is inappropriate because the state action does not implicate important state interests. To the contrary, courts have repeatedly held that state actions to enforce consumer protection laws against unfair and deceptive business practices are sufficiently important for *Younger* purposes. *See, e.g.*, *Commc'ns Telesystems Int'l v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1017 (9th Cir. 1999) (recognizing protection of consumers from unfair business practices as an important state interest in affirming abstention under *Younger*);

11

*Williams v. Washington*, 554 F.2d 369, 370 (9th Cir. 1977) ("Because of Washington's governmental interest in enforcing its consumer protection act, federal abstention is required[.]"); *Cedar Rapids Cellular*, 280 F.3d at 879–80 (noting Iowa's interest in enforcing consumer protection statutes); *State Farm*, 902 F. Supp. at 1218 (noting Hawaii's strong interest in protecting consumers from unfair and deceptive trade practices by insurance carriers); *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 410 (S.D.N.Y. 2014) (collecting cases). This importance is underscored when health and safety are implicated. *See, e.g.*, *Meredith v. Oregon*, 321 F.3d 807, 818 (9th Cir. 2003) (noting that protecting residents' safety is an important state interest); *Fedex Ground Package Sys., Inc. v. Ingenito*, 86 F. Supp. 3d 1121, 1127 (E.D. Cal. 2015) (noting power to protect health and welfare of the public is primarily and historically a matter of local concern over which states have great latitude); *Monster Beverage*, 2013 WL 12131740, at *7 (noting state's interest in protecting the health and safety of its residents); *cf. Bristol-Myers I*, 2014 WL 3427387, at *9 ("The State has a specific, concrete interest in protecting its citizens and economy from false, unfair and deceptive practices related to prescription drugs." (citation omitted)).

Plaintiffs provide no support for their arguments that their affirmative defenses—under the safe harbor provision of HRS § 481A-5(a)(1) based on the FDA's approval of a certain label, or based on First Amendment concerns—

12

somehow negate the State's interest for purposes of *Younger*. Indeed, the inquiry into the substantiality of the State's interest in its proceedings must not focus narrowly on its interest in the *outcome* of a particular case—prohibiting Plaintiffs from marketing Plavix with certain labels—but instead on the importance of the generic proceedings to the State, i.e., its interest in enforcing its consumer protection laws. *See NOPSI*, 491 U.S. at 365);[7] *State Farm*, 902 F. Supp. at 1218 (rejecting argument that *Younger* was inapplicable because state proceeding suppressed speech, which addressed the merits of the particular case, and focusing instead on State's general interest in protecting consumers from unfair and

---

[7] Indeed, in *NOPSI*, the Supreme Court held that "the mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction." 491 U.S. at 365 (citation omitted). The Court left open the possibility that *Younger* might *not* require abstention where the federal plaintiff makes a facially conclusive claim of federal *preemption*; however, a federal preemption claim is not facially conclusive if its determination requires further factual inquiry. *See id.* at 367. When faced with a similar argument that the FDA's interest in safety and labeling negated a state's interest, one district court concluded it need not engage in weighing federal versus state interests under this *Younger* prong unless a party raises a formal preemption challenge (which Plaintiffs have not done here). *See Monster Beverage*, 2013 WL 12131740, at *6 n.6 ("The Court is not persuaded that it needs to engage in a weighing of federal versus state interests, *aside from the preemption question*, in deciding whether an important state interest exists for the purposes of Younger abstention." (emphasis added)). Regardless, Plaintiffs' claim that they benefit from a safe harbor based on FDA approval requires further factual inquiry and legal analysis, and thus would not defeat *Younger* abstention even if considered.

13

deceptive practices by insurance carriers);[8] *see also TVI*, 2018 WL 1610220, at *4 (rejecting argument that Attorney General's consumer protection action in state court did not implicate important state interests because it violated First Amendment rights, noting that such federal challenges could be raised in state court).[9] And, as discussed above, Plaintiffs' attempt to distinguish analogous cases based on more robust pre-filing investigations or investigations involving certain types of state actors lacks merit.

C. **Exception to *Younger***

Finally, Plaintiffs argue that even if the *Younger* factors have been met, abstention is not appropriate because of the "extraordinary circumstances" exception to *Younger*.[10] Plaintiffs argue that their First Amendment claim

---

[8] Plaintiffs argue *State Farm* is no longer relevant after *Sprint*. *See* ECF No. 36 at 28. But *State Farm* mirrors *NOPSI* with regard to the "important state interest" prong, and Plaintiffs agreed at the hearing that *NOPSI* articulates the relevant standard for that prong.

[9] *TVI also* rejected a federal plaintiff's similar attempt to avoid *Younger* by arguing the state court action *lacked merit*, noting that the federal plaintiff's claims "either act as a defense to the Attorney General's state claims, *i.e.* stating the [Attorney General] cannot seek the relief it is requesting, or serve to challenge the facts as presented by the [Attorney General], *i.e.* the factual basis for its claims is unfounded" and that, either way, *Younger* applied because the court was "being asked to rule on facts and legal claims that would have a dispositive effect on the state court action." 2018 WL 1610220, at *4.

[10] Although Plaintiffs' brief makes a cursory reference to "bad faith," *see* ECF No. 36 at 30, Plaintiffs conceded at the hearing they do not argue the "bad faith" exception.

constitutes an extraordinary circumstance because they face irreparable harm in the form of the state action chilling their speech. But the state court can resolve these First Amendment concerns and provide remedies as appropriate. *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) ("Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights.").

Indeed, none of the binding First Amendment cases Plaintiffs cite pertain to abstention under *Younger*—where a party like Plaintiffs seeks the extraordinary remedy of a federal court enjoining a state proceeding (here, a state proceeding that has been ongoing for six years and is on the eve of trial). *See* ECF No. 36 at 29–32. Instead, Plaintiffs rely on cases addressing *Pullman*[11] abstention, under which a federal court refrains from addressing the constitutionality of a state statute because a state court ruling on a state law issue may moot or narrow the constitutional question. It is appropriate to abstain under *Pullman* only if: (1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) the proper resolution of the possible determinative issue of state law is uncertain. *See Porter v. Jones*, 319 F.3d 483,

---

[11] *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

492 (9th Cir. 2003). As the Ninth Circuit has explained, *Pullman* abstention is rarely appropriate in First Amendment cases because the first *Pullman* factor will almost never be present, as free speech guarantees are always an area of particular federal concern, and the delay in awaiting a state court ruling would chill those rights the plaintiff seeks to protect. *See id.*. The Court is not convinced that the same concerns exist here under *Younger*, where the state proceeding has been ongoing for years without a request for an injunction, and trial is imminent.

Nor is the Court persuaded by Plaintiffs' argument that an extraordinary circumstance exists here because proceeding with the state action might eliminate the opportunity to address their federal claim. Plaintiffs offer no argument—nor could they—that they are unable to raise their First Amendment challenge in the state court proceeding (and, as the State notes, Plaintiffs have raised this challenge in state court). *See* ECF No. 33-1 at 13–14. Nor have Plaintiffs articulated why full vindication of their rights necessarily requires intervention before trial— particularly when they waited six years to vindicate these rights. *See* ECF No. 36 at 33 (citing *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018), which held *Younger* inapplicable because of a lack of interference with state proceedings, and alternatively applied the extraordinary circumstances exception to a pretrial detainee challenging his incarceration for six months without a constitutionally adequate bond hearing); *cf. Moore*, 442 U.S. at 433 (noting that, although the

16

"extraordinary circumstances" exception defies an easy definition, "such circumstances must be 'extraordinary' in the sense of creating an *extraordinarily pressing need for immediate federal equitable relief*" (emphasis added) (citation omitted)); *see also* Compl. ¶¶ 113, 116 (alleging harm every day the state court suit is pending and that the "chill is intensified" given Plaintiffs' liability will be decided by a lay jury or judge without expertise). The Court is thus unconvinced that extraordinary circumstances exist that take this action outside of *Younger*. *See Monster Beverage*, 2013 WL 12131740, at *9 (abstaining under *Younger* even though federal plaintiff alleged that City Attorney's investigation into and attempts to regulate it violated its First Amendment rights), *aff'd* 650 F. App'x at 346 (noting state court litigation provided federal plaintiff adequate opportunity to raise federal questions); *see also Corren v. Sorrell*, 151 F. Supp. 3d 479, 488 (D. Vt. 2015) (rejecting argument that First Amendment interests brought case within the "extraordinary circumstances" exception where these issues could be timely and adequately addressed in state court).

### III. CONCLUSION

For the foregoing reasons, the Court concludes that abstaining under *Younger* is necessary. Plaintiffs do not respond to the State's argument that, because the federal action seeks only injunctive and declaratory relief, the appropriate remedy is dismissal rather than a stay. ECF No. 33-1 at 28 (citing

17

*Gilbertson*, 381 F.3d 965).  The Court therefore **DISMISSES** the Complaint without leave to amend.  This dismissal is, however, without prejudice and nothing in this ruling shall prevent Plaintiffs from raising any constitutional challenge or claim in the ongoing state action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, March 16, 2020.



Jill A. Otake
United States District Judge

CIVIL NO. 20-00010 JAO-RT, *Bristol-Myers Squibb, et al. v. Clare E. Connors, in her official capacity as the Attorney General of the State of Hawai'i*, ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

18